# In the United States Court of Federal Claims

No. 11-207C

Filed: November 13, 2019

| | |
|---|---|
| **IAIN D. PEDDEN,**<br><br>        *Plaintiff,*<br><br>v.<br><br>**UNITED STATES,**<br><br>        *Defendant.* | Keywords: Statutory Interpretation; Legislative Purpose; Arbitrary and Capricious; Promotion; Remand; 10 U.S.C. § 12207; RCFC 12(b)(6); Reported Opinion |

*Eric Sebastian Montalvo,* Federal Practice Group, Washington, D.C., for the plaintiff.

*Michael D. Austin*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., *LT Tyson Peter Marx, USN*, Judge Advocate General's Corps, Department of the Navy, of counsel.

## MEMORANDUM OPINION

*HERTLING*, **Judge**

Marine Corps Judge Advocate Lieutenant Colonel Iain D. Pedden sues the United States, acting through the Department of the Navy's Board for Correction of Naval Records ("BCNR") and the Marine Corps, for the pay and allowances he would have received had the Marine Corps promoted him to the rank of captain earlier than it did. Statute and Department of Defense regulations require the Marine Corps to credit new judge advocates with "constructive service" for part of the time they spent in law school. Lt. Col. Pedden alleges that the Marine Corps misapplied this constructive service credit ("CSC") in a way that delayed his consideration for promotion to captain by one year, consequently conferring on him a lower lineal placement, delaying his subsequent promotions, and thereby reducing his pay.

The defendant has moved to dismiss the case under Rule 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC") for failure to state a claim or, in the alternative, for judgment on the administrative record under RCFC 52.1. (ECF 69.) The plaintiff has cross-moved for judgment on the administrative record and to supplement the administrative record. (ECF 73.)

For the following reasons, the defendant's motion to dismiss under RCFC 12(b)(6) is granted in part: Counts I and II of the Amended Complaint and Count IV of the Supplemental Complaint are dismissed. The defendant's motion is denied as to Count III of the Amended Complaint. The plaintiff's motion for judgment on the administrative record under RCFC 52.1 is

denied in part and stayed in part. The decision of the BCNR is vacated, and the case is remanded for further proceedings.[1]

## I.  BACKGROUND

A Department of the Navy policy applied CSC to Lt. Col. Pedden's service record after a selection board had already selected candidates for promotion to captain. The plaintiff was promoted to captain more than a year later by a board that could have promoted him without the plaintiff having been awarded CSC. The plaintiff has sought since 2005 to backdate his promotion to captain as part of the lawful award of his CSC, but the BCNR found that his award of CSC complied with the governing statutes and regulations.

### A.  Facts

In March 2001, the plaintiff enlisted in the Marine Corps through the Platoon Leader's Course—Law. On October 13, 2001, after completing Officer Candidate School, he was commissioned as a second lieutenant in the Marine Corps Reserve with Military Occupational Specialty designation 4401, student judge advocate. At the time of his commissioning, the plaintiff had completed two years of law school. He graduated from law school in 2002 and was admitted to the Illinois Bar in March 2003. He reported to The Basic School in June 2003, graduating in December 2003. The administrative record does not disclose why it took the Marine Corps more than a year after the plaintiff graduated from law school to assign him to The Basic School, which the plaintiff had to complete before being assigned to the Naval Justice School ("NJS"). During oral argument, the plaintiff asserted that the date of assignment of new judge advocates to The Basic School was random, and the defendant did not rebut that assertion.

Based on his time in grade as a second lieutenant, the plaintiff was promoted on October 13, 2003, to first lieutenant during his time at The Basic School.

Following the plaintiff's completion of The Basic School, he reported in January 2004 to the NJS to attend the Basic Lawyer Course.

In February 2004, while the plaintiff was attending the NJS Basic Lawyer Course, the Marine Corps convened a selection board pursuant to 10 U.S.C § 611(a) to recommend eligible first lieutenants for promotion to captain during Fiscal Year ("FY") 2005. The plaintiff was not considered for promotion by this selection board because, when it convened, his date-of-rank as first lieutenant of October 13, 2003, was below the zone of consideration for promotion to captain.

That same month, while attending the NJS Basic Lawyer Course, the plaintiff was notified that "[u]pon designation as a Marine Corps judge advocate following graduation from

---

[1] Although the plaintiff titled his motion as including a request to supplement the administrative record, he neither explained what materials he was seeking to include in the administrative record nor mustered any argument regarding that aspect of his motion. Accordingly, the Court deems that aspect of the motion to have been waived.

Naval Justice School," he would receive CSC, which would have the effect of advancing him on the lineal list as if he had been promoted to first lieutenant on October 13, 2001, and treating October 13, 1999, as his initial commissioning date. The notification also stated that CSC is granted "to Marine Corps judge advocates to determine lineal position, permanent grade, seniority in permanent grade, and eligibility for promotion." Finally, the notification specified that "[CSC] commences on the date that your lineal adjustment is entered into the Manpower Management System . . . following your designation as a Marine Corps judge advocate upon graduation from Naval Justice School and acceptance of this lineal adjustment." (Suppl. Compl. ¶ 9, ECF 61 (ellipsis in original).) On February 25, 2004, the plaintiff acknowledged and accepted the award of CSC, his lineal position, and the appointment as described in the notification.

On March 5, 2004, Lt. Col. Pedden graduated from the NJS and was designated a Marine Corps judge advocate. Pursuant to the award of CSC, the Marine Corps later changed the plaintiff's commissioning date from 2001 to 1999, and his first-lieutenant date-of-rank from 2003 to 2001. The Marine Corps also advanced the plaintiff on the lineal list, changing his lineal control number from 07256000 to 04566500.

Had the Marine Corps applied CSC to the plaintiff's record before the February 2004 (FY 2005) selection board was convened, the plaintiff would have been eligible for consideration for promotion to captain. The plaintiff alleges that his promotion to captain would have been consistent with the FY 2005 board's results. (Am. Compl. ¶ 31.)

Almost a year later, in February 2005, the FY 2006 Marine Corps captain-selection board convened and considered and selected Lt. Col. Pedden for promotion to captain as the second of 941 Marine officers promoted to captain that year. The first lieutenants promoted by the FY 2006 board had dates of rank as late as December 2003. Lt. Col. Pedden's date-of-rank prior to the award of CSC was October 2003. The FY 2006 board's consideration of dates-of-rank more recent than the plaintiff's actual, non-constructive date-of-rank suggests that even without CSC, Lt. Col. Pedden would have been promoted to captain by the FY 2006 board. (*See* AR 72.) Relative to the most junior officer promoted by the same FY 2006 promotion board, Lt. Col. Pedden lost 533 days of seniority when he was promoted to captain. (AR 211.)

### B. Governing Law

#### 1. Marine Corps Promotion Process

Promotions of Marine Corps officers to the ranks of captain and above, through brigadier general, are recommended by a selection board. 10 U.S.C. § 611(a). To be considered for promotion by a selection board, officers must generally have spent a specific amount of time in a rank (the "time-in-grade requirement"). 10 U.S.C. § 623.

Upon the approval by the President under 10 U.S.C. § 618 of the report of a selection board, "the Secretary of the military department concerned shall place the names of all officers approved for promotion within a competitive category on a single list for that competitive category, to be known as a promotion list, in the order of the seniority of such officers on the active duty list . . . ." 10 U.S.C § 624(a)(1). Thereafter, with some exceptions not relevant to

3

this case, "officers on a promotion list for a competitive category shall be promoted to the next higher grade when additional officers in that grade and competitive category are needed. Promotions shall be made in the order in which the names of officers appear on the promotion list and after officers previously selected for promotion in that competitive category have been promoted." 10 U.S.C. § 624(a)(2). Appointments to the rank of captain do not require Senate confirmation. 10 U.S.C. § 624(c).

### 2. Statute Requiring Constructive Service Credit

To attract officers with advanced professional degrees, 10 U.S.C. § 12207 ("the CSC statute") provides constructive service to officers for their advanced education, as follows:

> Under regulations prescribed by the Secretary of Defense, a person who is receiving an original appointment as a reserve commissioned officer (other than a commissioned warrant officer) of the Army, Navy, Air Force, or Marine Corps, or a designation in, or an assignment to, an officer category in which advanced education or training is required and who has advanced education or training, shall be credited with constructive service for such education, training, or experience . . .

10 U.S.C. § 12207(b)(1).

The statute further provides that any such constructive service "shall be credited at the time of the original appointment of the officer or assignment to or designation in an officer category in which advanced education or training or special experience is required." 10 U.S.C. § 12207(b)(4).

The statute goes on to specify that this constructive service may only be used to determine the officer's "(1) initial grade as a reserve officer; (2) rank in grade; and (3) service in grade for promotion eligibility." 10 U.S.C. § 12207(e). Finally, the statute provides that "[t]he grade and position on the reserve active-status list of a person receiving an appointment as a reserve officer who at the time of appointment is credited with service under this section shall be determined under regulations prescribed by the Secretary of Defense based upon the amount of service credited." 10 U.S.C. § 12207(f).

### 3. Regulations Implementing Constructive Service Credit

The Marine Corps is part of the Department of the Navy, which in turn is part of the Department of Defense. The CSC statute is implemented through a Department of Defense Directive: *Service Credit for Commissioned Officers*, DoDD 1312.3 (1996) (hereinafter "the Defense Directive"). The Defense Directive is implemented for Marine Corps judge advocates by a Secretary of the Navy Instruction: *Designation of Officers of the Regular Marine Corps and*

4

*Marine Corps Reserve as Marine Corps Judge Advocates*, SECNAVINST 1120.9A (1988) (hereinafter "the Navy Instruction").[2]

### a. The Defense Directive

DoDD 1312.3 "implement[ed] Section 12207 of [Title 10] to establish policies and procedures governing the granting of service credit to persons upon original appointment, designation, or assignment as a Reserve commissioned officer, except those in the health professions." DoDD 1312.3 § 1.3. The Directive provides that "[i]t is the policy of the Department of Defense that the award of service credit to any person being appointed, assigned, or designated as a commissioned officer in an officer category shall be equitably determined to establish an appropriate appointment grade and date of rank relative to other officers in the same competitive category." DoDD 1312.3 § 4.1. The Directive further provides "[t]he entry grade and date of rank or promotion service credit in grade of a commissioned officer (other than a health professional officer) shall be determined by the entry grade credit awarded upon appointment. The entry grade credit that is awarded shall be the sum of the prior commissioned service allowed and the amount of constructive service credit allowed." DoDD 1312.3 § 4.2.

CSC, insofar as relevant to this case, is covered in DoDD 1312.3 §§ 4.2.2 and 4.2.2.2, which read:

> 4.2.2 <u>Constructive Service Credit</u>. The purpose of constructive service credit is to provide grade and date of rank comparability for a person who begins commissioned service after obtaining the additional education, training, or experience required for appointment, designation, or assignment as a commissioned officer in a professional field relative to a contemporary who began commissioned service immediately after obtaining a baccalaureate degree. Constructive service credit shall be determined in accordance with the following guidelines.

> 4.2.2.2. Periods of time spent in an active status as a commissioned officer or on active duty may not be counted when computing constructive service credit, except the Secretary of the Military Department concerned may award constructive service credit for advanced education or an advanced degree when an officer completes the advanced education, or receives the advanced degree in an active status or while on active duty in less than the number of years normally required to complete such advanced education or receive such advanced degree. Constructive service credit may be awarded only if such education or advanced degree is required as a

---

[2] DoDD 1312.3 was superseded by DoDD 1312.03 on October 6, 2006, but it was in effect at the time relevant to this case.

5

prerequisite for appointment as a commissioned officer in a particular officer category, and only to the extent that the period of time normally required to complete such advanced education or receive such advanced degree exceeds the actual number of years in which the officer obtained such advanced education or degree while a commissioned officer in an active status or on active duty.

### b. The Navy Instruction

The award of CSC and the amount awarded to a qualified officer in the Marine Corps are governed by paragraph 8 of SECNAVINST 1120.9A.

As relevant to this case, SECNAVINST 1120. 9A ¶ 8c provides:

> c. <u>Platoon Leaders Class (Law) Program, Officer Candidate (Law) Program, Law Education Program, and Excess Leave Program.</u> An officer commissioned through other than the Direct Commissioning Program, such as through the Platoon Leaders Class (Law) Program or Officer Candidate (Law) Program or an officer participating in the Law Education Program or Excess Leave Program shall be granted Entry Grade Credit only if entitled to constructive service credit under subparagraph 8c(1) or 8c(2).

Specific to this case is SECNAVINST 1120.9A ¶ 8c(3) which further provides:

> (3) An individual who was initially appointed as a Marine Corps Reserve officer in the Officer Candidate (Law) Program . . . before graduation from law school shall be credited upon designation as a judge advocate with: (1) one day of credit for each day of prior service as a commissioned officer (other than as a commissioned warrant officer) that was performed as a Regular officer on active duty, or as a Reserve officer on active duty or in an active status, in any Armed Force of the United States (Prior Commissioned Service Credit), plus (2) constructive service credit computed under subparagraph 8c(1), which shall be applied under subparagraph 10b.

### 4. Other Relevant Laws

### a. Special Selection Boards

Title 10 of the U.S. Code also includes provisions setting out procedures for when an officer was not considered by a selection board for promotion due to administrative error. Section 628(a)(1), titled "Persons not considered by promotion boards due to administrative error," provides in relevant part:

> If the Secretary of the military department concerned determines that because of administrative error a person who should have been considered for selection for promotion from in or above

6

the promotion zone by a promotion board was not considered . . . the Secretary shall convene a special selection board under this subsection to determine whether that person . . . should be recommended for promotion.

If a special selection board convened under 10 U.S.C. § 628(a)(1) "recommends for promotion to the next higher grade a person whose name was referred to it for consideration, that person shall, as soon as practicable, be appointed to that grade in accordance with subsections (b), (c) and (d) of section 624 of this title." § 628(d)(1).

Subsection (g) of § 628, titled "[j]udicial review," provides that "[a] court of the United States may review a determination" not to convene a special selection board and also "may review the action of a special selection board . . . ." § 628(g)(1), (2). In such cases, a court may set aside the special selection board's determination only if it is arbitrary or capricious; not based on substantial evidence; a result of material error of fact or material administrative error; or otherwise contrary to law.

The statute also expressly provides:

> No official or court of the United States may, with respect to a claim based to any extent on the failure of a person to be selected for promotion by a promotion board—
>
> (1) consider the claim unless the person has first been referred by the Secretary concerned to a special selection board convened under this section and acted upon by that board and the report of the board has been approved by the President; or
>
> (2) except as provided in subsection (g), grant any relief on the claim unless the person has been selected for a promotion by a special selection board convened under this section to consider the person for recommendation for promotion and the report of the board has been approved by the President.

10 U.S.C. § 628(h).

Finally, the statute authorizes the Secretary of each military department to promulgate regulations governing special selection boards. 10 U.S.C. § 628 (j)(1).

Pursuant to this authority, the Marine Corps Promotion Manual, Marine Corps Order P1400.31C, includes provisions on special selection boards. Paragraph 7001, relying on SECNAVINST 1402.1B, notes who is eligible to request a special board. Paragraph 7002 then spells out the grounds on which an eligible officer may request a special selection board. The first ground specified is "Administrative Error," defined as "when an officer was eligible for consideration by a promotion selection board, but whose record was not in the eligible population reviewed by the board." The second ground for a special selection board is the officer was "considered in an unfair manner." Because the plaintiff was not considered by the February 2004 selection board, this second ground does not apply.

7

### b. Running Mate System

The final statutory provision relevant to the case is 10 U.S.C. § 14306, titled "[e]stablishment of promotion zones: Navy Reserve and Marine Corps Reserve running mate system." The statute directs the assignment of running mates as follows:

> An officer to whom a running mate system applies shall be assigned as a running mate an officer of the same grade on the active-duty list of the same armed force. The officer on the reserve active-status list is in the promotion zone and is eligible for consideration for promotion to the next higher grade by a selection board convened under [the relevant statutes for reserve promotion] when that officer's running mate is in or above the promotion zone established for that officer's grade under [the chapter including 10 U.S.C. § 14306(b)].

10 U.S.C. § 14306(b).

The plaintiff acknowledges that this running mate provision applies only to officers on the reserve active status list, and because the plaintiff was never on that list this statute does not apply to him. He argues, however, that the rationale behind the running mate system is identical to the purpose of the Defense Directive, "namely to place an officer with education beyond the baccalaureate degree receiving constructive credit in the same position as an officer who began his commissioned service immediately after completing baccalaureate studies." (Pl.'s Corrected Opp'n at 5 n.7, ECF 73.)

### C. Procedural Background

The plaintiff has been contesting the timing of his CSC and the failure of the Marine Corps to consider him for promotion to captain since early 2005. In 2005 while still a captain (though he had been selected for major), the plaintiff sought to have the Marine Corps correct an alleged error in the application of his CSC.[3] In 2008, he filed a petition with the BCNR, which denied him relief. In 2011, the plaintiff initiated this case.

Following oral argument on the defendant's motion to dismiss in 2012, the Court again heard argument, ordered supplemental briefing, and subsequently granted the plaintiff's motion to file an Amended Complaint in 2016. (ECF 42.)

Upon joint motion of the parties, the case was subsequently remanded to the BCNR in December 2016. On remand, the BCNR requested an advisory opinion from the Military

---

[3] The BCNR noted in its decision, and the plaintiff's brief reiterates, that the plaintiff initially challenged the timing of the award of his CSC in 2005, but at oral argument the plaintiff noted that he first challenged the timing of his CSC through his chain of command in 2004. The difference is immaterial to the Court's consideration of this case.

Personnel Law Branch of the Marine Corps Judge Advocate Division. After receiving the advisory opinion, the BCNR again rejected the plaintiff's claim in May 2017.

In December 2017, the plaintiff filed a Supplemental Complaint (ECF 61). The parties filed their respective cross-motions now pending. In June 2019, the case was transferred to this judge. (ECF 81.) The motions are fully briefed, and the Court heard oral argument on September 25, 2019.

Counts I through III of Lt. Col. Pedden's Amended Complaint (ECF 27-1) and Count IV added by his Supplemental Complaint (ECF 61) are pending before this Court. These four counts articulate overlapping theories as to why the BCNR's denial of Lt. Col. Pedden's petition to backdate his date-of-rank as captain was legally invalid.

Count I claims that, by not applying CSC when Lt. Col. Pedden was appointed an officer, the Marine Corps' application of CSC to Lt. Col. Pedden violated two requirements of 10 U.S.C. § 741: first, that date-of-rank must reflect the application of CSC and, second, that Department of Defense ("DoD") CSC regulations apply uniformly among the services. The plaintiff alleges that the "award is to be applied so as to approximate equality, for rank and pay purposes, between the officer who enters active service on completion of a baccalaureate degree, and the officer who instead elects to pursue graduate education." (Am. Compl. ¶ 27, ECF 27-1.) The Marine Corps' application of CSC to Lt. Col. Pedden, Count I alleges, denied him the date-of-rank of an officer commissioned at the time he commenced his legal studies in August 1999. (*Id.* ¶ 28.)

Count II alleges that the Marine Corps' application of CSC under standards different than those employed by the other armed services violates the statutes that require CSC to be applied at appointment and a regulation requiring that CSC be administered uniformly among all of the armed services. (Am. Compl. ¶ 36, ECF 27-1 (citing 10 U.S.C. §§ 533 and 12207 as requiring application of CSC when appointed and citing DoDD 1312.03 § 4 as requiring that CSC "apply uniformly among the Army, Navy, Air Force and Marine Corps").)

Count III claims that the Marine Corps' application of CSC upon designation as a judge advocate and not upon appointment as an officer is arbitrary and capricious because it has "no basis," considers "no relevant factors," and "essentially 'flip[s] a coin' to determine when CSC should be applied." (*Id.* ¶ 44.)

Finally, Count IV, added after the BCNR rejected the plaintiff's petition on remand, alleges that the BCNR's "determination [that] the proper application of CSC does not require the Marine Corps to place Lt. Col. Pedden in the same lineal position, seniority in permanent grade, and eligibility for promotion as his running mate was arbitrary, capricious, an abuse of discretion, and an error of law in violation of the [Administrative Procedure Act]." (Suppl. Compl. ¶ 18 (ECF 61).)

## II. JURISDICTION

The Tucker Act has been interpreted to limit this Court's jurisdiction over statutory and regulatory claims, even in the military pay context, to causes of action based on money-mandating statutes and regulations. 28 U.S.C. § 1491; *Metz v. United States*, 466 F.3d 991, 995-97 (Fed. Cir. 2006). A statute is money-mandating when it is "*reasonably amenable* to the reading that it

9

mandates a right of recovery in damages." *Fisher v. United States*, 402 F.3d 1167, 1174 (Fed. Cir. 2005) (emphasis in original). Although the Military Pay Act is generally recognized as money-mandating, its money-mandate is limited by the principle that "a service member is entitled only to the salary of the rank to which he is appointed and in which he serves." *Smith v. Sec'y of Army*, 384 F.3d 1288, 1294 (Fed. Cir. 2004); *Antonellis v. United States*, 723 F.3d 1328, 1333 (Fed. Cir. 2013). Promotion claims under the Military Pay Act are only money-mandating under two exceptions to that principle: when (1) a service member met the legal requirements for promotion (had a "clear-cut legal entitlement"), but the service failed to recognize it; or (2) non-promotion led to the service member's involuntary discharge. *Smith*, 384 F.3d at 1294.

*Lewis v. United States* clarified *Smith*'s requirement of a "clear-cut legal entitlement" to promotion. 458 F.3d 1372, 1378 (Fed. Cir. 2006). A promotion claim's reviewability depends on whether the denial of the promotion was an official's exercise of "Presidential discretion in declining to grant the appointment or whether the official is improperly construing the Constitution, a statute, or regulation directing appointments (in which case the action is reviewable)." *Id.*

### A. Promotion to Captain

Lt. Col. Pedden's claim that he was entitled to an earlier promotion to captain alleges a general misapplication of the CSC statute and regulations as its cause, not any discretionary decision related to his individual eligibility for promotion or the timing thereof. This claim meets *Smith*'s "clear-cut legal entitlement" standard. The delay in application of Lt. Col. Pedden's CSC was a service-wide written "Instruction" implementing a DoD-wide regulation implementing a statute. The claim presented by Lt. Col. Pedden differs from the plaintiff's claim in *Smith*; the plaintiff there was passed over twice for promotion to colonel in the exercise of discretion by selection boards. *Smith*, 384 F.3d at 1295. A promotion prevented or delayed by a subordinate official's misconstruction of a statute, however, is distinct and qualifies as a case of clear-cut legal entitlement, a money-mandating claim sufficient to confer jurisdiction under the Military Pay Act.

Morever, Lt. Col. Pedden argues (and the defendant does not fully rebut) that the procedural misapplication of CSC prevents officers from meeting a lone, objective time-in-grade requirement for what is otherwise considered to be an automatic promotion from first lieutenant to captain. (*See* Am. Compl. ¶ 12, ECF 27 ("The selection rate for the FY06 Captain's selection board among First Lieutenants with an MOS of 4401/4402 was 100%."); Suppl. Compl. ¶ 28, ECF 61 ("[T]he selection process for judge advocates pending selection for Captain is hardly competitive, as practically no judge advocate being considered for promotion to Captain will have operational experience."); *cf.* 10 U.S.C. § 624(c) (promotions to captain do not require Senate confirmation, an indication they are routine). Lt. Col. Pedden's claim to a clear-cut legal entitlement is distinguishable from the claim the Federal Circuit rejected in *Smith*. Were Lt. Col. Pedden to prevail on the merits of his claim, he would have "'a clear-cut legal entitlement' to the promotion in question.'" *Id.* at 1294 (quoting *Skinner v. United States*, 219 Ct. Cl. 322, 332, 494 F.2d 824, 830 (1979)). The Court has jurisdiction to hear the plaintiff's claim for promotion to captain.

### B. Later Promotions

Although the defendant does not contest the Court's jurisdiction to hear this case, the Court must itself determine that it does in fact have jurisdiction. *See, e.g., St. Bernard Parish Gov't v. United States*, 916 F.3d 987, 992-93 (Fed. Cir. 2019). The Court lacks jurisdiction to review the later promotions to major and lieutenant colonel because the Military Pay Act's money-mandate does not remedy delay in subsequent promotions. Lt. Col. Pedden's claim for earlier promotion to ranks above captain more closely resembles the claims for earlier promotion consideration that the Federal Circuit rejected in *Smith*. In addition to his claim for promotion to colonel, the retired lieutenant colonel in *Smith* argued that the correct application of his CSC would have resulted in his earlier promotion to major and lieutenant colonel. *Smith*, 384 F.3d at 1290-91. The Federal Circuit remanded the case for analysis of the involuntary discharge exception, but first held that "[t]he claim that he should have been given earlier consideration for those promotions does not carry with it an entitlement to retroactive pay at the pay level for those ranks before he was actually promoted." *Id.* at 1294 n.2.

Here, Lt. Col. Pedden similarly seeks back pay for delay in his consideration for promotion to major and lieutenant colonel caused by his allegedly late promotion to captain. There is no suggestion that these later promotions are automatic in the same way that a CSC-recipient's promotion from first lieutenant to captain is. The Court finds no meaningful distinction between the *Smith* plaintiff's claim for delay in his promotions and Lt. Col. Pedden's claim for his later promotions after captain. The Court only has jurisdiction to award Lt. Col. Pedden as a monetary award the difference in pay between first lieutenant and captain for the period of time between the date the promotions made by the FY 2005 captain selection board took effect and the date the plaintiff was in fact promoted to captain. It would then be left to the BCNR to determine if other relief would be appropriate.

### III. STANDARD OF REVIEW

The defendant argues that the Amended and Supplemental Complaints fail to state a claim for relief and moves to dismiss all counts under RCFC 12(b)(6). (ECF 69.) In evaluating a motion to dismiss for failure to state a claim under RCFC 12(b)(6), the Court must accept as true a complaint's well-pleaded factual allegations and construe them in the most favorable manner to the plaintiff. *Ashcroft v. Iqbal*, 566 U.S. 662, 668 (2009). The Court must draw all reasonable inferences in favor of the non-moving party. *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed Cir. 2001).

To avoid dismissal, a complaint must allege facts "plausibly suggesting (not merely consistent with)" a showing that the plaintiff is entitled to the relief sought. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 556).

"[J]udicial review of decisions of military correction boards is conducted under the [Administrative Procedure Act]." *Walls v United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009). Pursuant to a motion under RCFC 52.1, the Court reviews the record before the corrections board to determine whether the board's decision was arbitrary, capricious, not supported by

substantial evidence, or contrary to applicable statues and regulations. *See Bernard v. United States*, 59 Fed. Cl. 497, 501, *aff'd*, 98 Fed. Appx. 860, 862 (Fed. Cir. 2004). The Court may resolve disputed factual issues under RCFC 52.1. *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed Cir. 2005).

"[U]nless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs." *Department of Navy v. Egan,* 484 U.S. 518, 530 (1988). "[M]ilitary administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs." *Dodson v. U.S. Gov't, Dep't of Army*, 988 F.2d 1199, 1204 (Fed. Cir. 1993). "It is not the business of the court to run the Army." *Knightly v. United States*, 227 Ct. Cl. 767, 769 (1981) (quoting *Orloff* v. *Willoughby,* 345 U.S. 83 (1953)).

## IV.   DISCUSSION

The merits of Lt. Col. Pedden's case present a recurring issue in judicial decision-making: should a formal or instrumental approach to the law control the outcome of a case. Lt. Col. Pedden's argument, at its core, seeks to force the Marine Corps to interpret the governing law and regulations in a way that meets the purposes for which he argues CSC is awarded. The defendant effectively argues that a formal reading of the plain meaning of those provisions requires that the plaintiff's claims be rejected.

### A.   Timing

The first two of Lt. Col. Pedden's claims in his Amended Complaint are easily addressed. In these claims, he alleges that the Marine Corps' application of CSC to him and the BCNR's decision upholding it contravene the plain language of the CSC statute, 10 U.S.C. § 12207(b)(1). His argument is that under the CSC statute the Marine Corps must apply CSC at the time of initial appointment. In his arguments before the BCNR and his brief on the pending motions, however, Lt. Col. Pedden effectively concedes those claims, and he did not pursue them during oral argument.

The CSC statute itself simply commands the award of CSC to eligible individuals under such regulations as may be prescribed. It allows for the award of CSC to "a person who is receiving an original appointment . . . , or designation in, or an assignment to" a relevant officer category. It is otherwise silent as to the timing of the award of CSC. *See* 10 U.S.C. § 12207(b)(1). Lt. Col. Pedden received his CSC upon designation as a judge advocate, in compliance with an express provision of the statute.

Similarly, the Defense Directive commands the award of CSC to a "person being appointed, assigned, or designated . . . ." DoDD 1312.3 § 4.1. The Navy Instruction commands the award of CSC to Marine Corps judge advocates at designation. SECNAVINST 1120.9A, ¶ 10b.

Lt. Col. Pedden received CSC at designation as expressly provided for in the CSC statute, Defense Directive, and Navy Instruction. The statute on its face cannot support his claim that the Marine Corps was required to award CSC earlier, at the time of original appointment.

12

### B. Uniformity

Lt. Col. Pedden also claims that CSC must be awarded in the same manner consistently across all the military services. He argues that only the Marine Corps waits until a lawyer is designated a judge advocate to award CSC. Although Lt. Col. Pedden makes the claim and continues to assert it, his brief does not present any argument for it aside from the simple assertion that the Defense Directive requires the identical treatment of CSC across all branches of the service. DoDD 1312.3 is, however, silent on the issue. In fact, Section 4.2.2.2 of the Defense Directive, on its face, vests discretion in the Secretary of each military department. In addition, the Defense Directive is, like the CSC statute, silent as to when CSC must be awarded as between appointment and designation. This claim too is unavailing and cannot form the basis for overturning the BCNR.

### C. Purpose

Unable to prevail on the plain language of the CSC statute and regulations, Lt. Col. Pedden focused his briefs and oral argument on an instrumental interpretation of both as alleged in his Supplemental Complaint. Lt. Col. Pedden agrees that the formal running mate system that links reserve- and active-duty officers' promotion eligibility does not apply to his facts.[4] Instead, Lt. Col. Pedden argues that the Defense Directive's declaration of CSC's purpose as "grade and date of rank comparability" between a credited officer and an officer with equivalent actual service, DoDD 1312.3 § 4.2.2, requires a running-mate-like effect when CSC is lawfully applied.

To demonstrate the allegedly required effect of CSC, Lt. Col. Pedden identified an actual Marine officer as an assumed running mate. This assumed running mate was commissioned as a second lieutenant on Lt. Col. Pedden's CSC-adjusted commissioning date and was promoted to first lieutenant in regular order. Unlike Lt. Col. Pedden, however, this assumed running mate was considered for promotion to captain in February 2004 and promoted to captain in July 2005. The plaintiff argues that his lack of seniority relative to an officer whose actual service matched Lt. Col. Pedden's credited service when Lt. Col. Pedden's CSC was applied in March 2004 demonstrates that the Navy Instruction's application of CSC at designation contravenes the "equitably" determined "grade and date of rank comparability" that the Defense Directive expressly declares as CSC's purpose.

The BCNR's decision on remand rejected this running-mate argument, noting that neither the relevant statutes nor regulations require a credited judge advocate to receive "the same promotion status as their most closely situated officer, or . . . 'running mate.'" (AR 204.) Lt. Col. Pedden maintains that the BCNR's failure to interpret the Defense Directive in a way that effectuates its purpose calling for grade and rank comparability is arbitrary, capricious, or contrary to law.

---

[4] As noted above, 10 U.S.C. § 14306 authorizes the Secretary of the Navy to establish promotion eligibility zones for officers on the reserve active status list by tying a reserve officers' promotion eligibility to an active duty "running mate" of the same grade.

Whatever the policy merits of Lt. Col. Pedden's argument about the purpose of the CSC statute and regulations, his argument that their purpose requires a running-mate effect fails as a matter of legal interpretation.

A statute or regulation's purpose "cannot be used to contradict text or to supplement it." Antonin Scalia & Bryan A. Garner, Reading Law 57 (1st ed. 2012). In *West Virginia University Hospitals, Inc. v. Casey* ("*WVUH*"), the Supreme Court rejected the argument that the legislative purpose of a statute shifting "attorney's fees" required the court to expand the definition of "attorney's fees" to include expert witness fees paid by counsel. 499 U.S. 83, 100 (1991). The Supreme Court reasoned, "[T]he purpose of a statute includes not only what it sets out to change, but also what it resolves to leave alone . . . . The best evidence of that purpose is the statutory text [adopted and signed]." *Id.* at 98. The Supreme Court concluded that "attorney's fees" was an unambiguous term that did not include expert witness fees and, had Congress wanted to, "Congress could easily have shifted 'attorney's fees and expert witness fees,' or 'reasonable litigation expenses,' as it did in contemporaneous statutes." *Id.* at 99. The Supreme Court was bound by the statute's more restrictive, unambiguous reference to attorney's fees. *Id.*

Under the fundamental supremacy-of-text principle illustrated in *WVUH*, this Court must reject Lt. Col. Pedden's argument that the Defense Directive's declared purpose for CSC requires the BCNR or this Court to supplement the Defense Directive or Navy Instruction's specific terms to include promotion-consideration comparability. The Navy Instruction defines the CSC applicable to Lt. Col. Pedden, and it does not account for comparability in promotion-consideration status between a credited officer and his running mate.

To the extent the Defense Directive's purpose statement might limit the Navy Instruction and its application by the Marine Corps, an interpretation of "grade and rank comparability" that does not include promotion consideration is reasonable, given the existence of separate statutes and regulations comprehensively governing the promotion-selection-board process.

Lt. Col. Pedden may be correct that an interpretation of the CSC statute and Defense Directive that would have resulted in his earlier promotion would offer a more effective incentive for the recruitment of judge advocates. It is not the judicial role, however, to interpret statutes and regulations in a way that best effectuates their underlying policy in cases for which they do not provide. "'A *casus omissus* does not justify judicial legislation.'" *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1340 (Fed. Cir. 2013) (O'Malley, J., dissenting) (quoting *Ebert v. Poston*, 266 U.S. 548, 554 (1925)). This approach is especially apt when the so-called problem's cause is the expected operation of the promotion statutes, which carry with them their own underlying policies and purposes.

None of this is to say that the Marine Corps and the Navy Department could not interpret the CSC statute and its implementing directives in the manner Lt. Col. Pedden is advocating. Nothing in these authorities, however, compels Lt. Col. Pedden's reading. The Marine Corps could adopt Lt. Col. Pedden's instrumentalist interpretation of the legal authorities to enable the timing of the award of CSC to judge advocates to allow for the running-mate system Lt. Col. Pedden seeks, but no language in any relevant authority compels that outcome. The decision of the BCNR to reject the plaintiff's argument is therefore not arbitrary and capricious.

### D. Rationality

A review of the CSC statutes and regulations leads the Court to conclude that these provisions leave the timing of CSC to the Secretary of the Navy's discretion. The Secretary may apply CSC at the time of designation, as happened to Lt. Col. Pedden, or he may apply CSC upon original appointment, as urged by the plaintiff. The Secretary exercised this discretion by specifying application upon designation in the Navy Instruction.

The Secretary must apply the statute and regulations consistently and rationally, and there is no claim that Lt. Col. Pedden was treated differently than any other judge advocate in the timing of the award of CSC. Count III of the Amended Complaint, however, claims that the Marine Corps' application of CSC upon designation as a judge advocate and not upon original appointment as an officer is arbitrary and capricious because it has "no basis," considers "no relevant factors," and "essentially 'flip[s] a coin' to determine when CSC should be applied." (Am. Compl. ¶ 44, ECF 27-1.).

The BCNR did not directly address the argument, but the advisory opinion the BCNR considered and included with its decision concluded that the BCNR could not review the Marine Corps' action under an arbitrary and capricious standard. (AR 237-38.) The advisory opinion explained that, under the BCNR's statute, 10 U.S.C. § 1552, the BCNR can only correct "legal or factual error" and treatment that "shocks the sense of justice." (AR 238.) The advisory opinion found that "because in this case the award of CSC is legally and factually correct, and does not shock the sense of justice, the BCNR cannot correct that award even if, as [Lt. Col. Pedden] alleges, the Marine Corps failed to consider all relevant factors, improperly considered a relevant factor, or awarded it differently than the other Services." (AR 238.) In essence, the advisory opinion concludes that the correctness of the Marine Corps' application of CSC to Lt. Col. Pedden puts the BCNR at the end of its remedial authority and precludes it from reviewing the rationality of the underlying policy that applies CSC at designation.

#### 1. "Arbitrary and Capricious" Standard

An official's or agency's irrational or "arbitrary and capricious" exercise of discretion is legal error. *Judulang v. Holder*, 565 U.S. 42, 53 (2011) (An agency must "exercise its discretion in a reasoned manner."). Reasoned decision-making is the cornerstone of the rule of law and judicial review. *See Dep't of Commerce v. New York*, 588 U.S. ___, 139 S. Ct. 2551, 2573 (2019) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 167-69 (1962)) ("[T]o permit meaningful judicial review, an agency must "disclose the basis" of its action."). A court must be able to assess "'whether [a] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Judulang*, 565 U.S. at 53 (quoting *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.,* 463 U.S. 29, 43 (1983)).

For example in *Judulang*, the Supreme Court held that the Board of Immigration Appeals ("BIA") had to exercise discretion granted to it by an immigration statute with an approach that is "tied, even if loosely, to the purposes of the immigration laws or the appropriate operation of the immigration system." *Id.* at 55. The BIA's discretionary definition of deportation grounds only considered the similarity or difference between certain legal provisions implicated in each case.

15

*Id.* at 58. Because it did "not rest on any factors relevant to whether an alien . . . should be deported," but turned deportation decisions into "a 'sport of chance'" the BIA definition was rejected. *Id.* at 58-59.

Applying an "arbitrary and capricious" standard to a military department's policy decision only requires the military department to provide a rational explanation connecting its policy decision consistent with the law to the facts it considered. Nevertheless, a presumption of regularity requires a plaintiff first to demonstrate some evidence of arbitrary and capricious decision-making before a court requires an explanation of a discretionary decision. *See Richey v. United States*, 322 F.3d 1317, 1327 (Fed. Cir. 2003).

### 2. BCNR Jurisdiction

The BCNR exercises the Secretary of the Navy's authority to correct records for "error or injustice." 10 U.S.C. § 1552. A Department of the Navy regulation establishes the BCNR and grants it "jurisdiction to review and determine all matters properly brought before it, consistent with existing law." 32 C.F.R. § 723.2(c).[5] It also specfies that the BCNR "is not an investigative body." 32 C.F.R. § 723.3(b). The BCNR's function is to "consider applications properly before it for the purpose of determining the existence of error or injustice in the naval records of current and former members of the Navy and Marine Corps, to make recommendations to the Secretary or to take corrective action on the Secretary's behalf when authorized." *Id.* A BCNR decision is a final action of the Secretary of the Navy. *Strickland v. United States*, 423 F.3d 1335, 1339 (Fed. Cir. 2005) ("After reviewing the record and the Board's recommendation, the Secretary or his designee makes the one and only actual *decision* . . . . [T]he service member may contest this final agency action in a court.") (emphasis added).

Lt. Col. Pedden's claim raised before the BCNR and in this Court that the Navy Instruction's application of CSC is arbitrary and capricious presents a legal error that the BCNR can consider and correct. The BCNR's consideration of whether the policy decision to apply CSC upon designation is rationally connected to facts the Secretary of the Navy considered would neither substitute the BCNR's expertise and policy judgment for that of the Secretary of the Navy, nor would it require the BCNR to find facts or investigate. The Secretary of the Navy may ultimately reject the BCNR's conclusion, and his reasoning for doing so is reviewable in this court. *Sanders v. United States*, 594 F.2d 804, 812 (Ct. Cl. 1979) ("[L]ike the boards, the Secretary must not act in an arbitrary, capricious manner, unsupported by substantial evidence, or in violation of the law. Actions of both are subject to judicial reversal for violation of such standards. This is well settled.").[6]

---

[5] The secretary of a military department may, by regulation, limit the jurisdiction of a record correction's board, *see Biddle v. United States*, 186 Ct. Cl. 87, 94 (1968), but there is no suggestion here that the Secretary of the Navy has exercised that authority.

[6] A part of the *Sanders* decision not relevant here, requiring consideration of causation, was superseded by the statute that provides for remanding promotion decisions to special

16

Moreover, Lt. Col. Pedden's demonstration that the Navy Instruction created disparate outcomes for no apparent reason, in light of the Defense Directive's requirement that an officer's CSC award "be equitably determined," DoDD 1312.3 § 4.1, is sufficient to overcome the presumption of regularity. The BCNR should have addressed Lt. Col. Pedden's argument that the Marine Corps' application of CSC at designation was arbitrary or, in other words, lacked a rational basis. *See Rudo v. Geren*, 818 F. Supp. 2d 17, 26 (D.D.C. 2011) ("the plaintiff's due process claim was not frivolous and the ABCMR board was required to address it"); *Ashe v. McNamara*, 355 F.2d 277, 282 (1st Cir. 1965) ("Congress having authorized administrative reconsideration and change of sentences that had become final, we think it was as much the duty of the Secretary and the Correction Board, as it would have been of a court empowered to entertain a collateral attack upon some final decision, to treat as void a sentence thus unconstitutionally imposed."). The BCNR did not decide the issue, and the advisory opinion it considered rejected the need to provide any explanation. (AR 238.) The advisory opinion's conclusion that the BCNR lacks authority to remedy an arbitrary and capricious application of a Navy Department regulation was mistaken.

The *post hoc* justifications for the policy presented in the defendant's briefing in this Court are not a substitute for the BCNR's consideration of and response to Lt. Col. Pedden's rationality argument. *Gose v. U.S. Postal Serv.*, 451 F.3d 831, 838 (Fed. Cir. 2006) ("The courts may not accept appellate counsel's *post hoc* rationalizations for agency action; [*SEC v. Chenery Corp.*, 332 U.S. 194 (1947),] requires that an agency's discretionary order be upheld, if at all, on the same basis articulated in the order by the agency itself . . . .") (ellipsis in original) (citation omitted); *Watson v. United States*, 113 Fed. Cl. 615, 635 (2013) (applying to military record correction board), *decision clarified,* 118 Fed. Cl. 266 (2014), *modified,* No. 12-785C, 2015 WL 4914966 (Fed. Cl. Aug. 17, 2015).

Although the Court does not find the Navy Instruction itself arbitrary and capricious, the BCNR's failure to provide in Lt. Col. Pedden's case any explanation for the Secretary's exercise of discretion in applying CSC at designation is arbitrary and capricious. The BCNR could not have properly concluded that CSC was applied without legal error in Lt. Col. Pedden's case without considering whether the Secretary's discretionary decision to apply CSC at designation was at least rationally related to relevant factors. If the BCNR did consider this question, it is not reflected in its decision, which addresses only the procedural validity of Lt. Col. Pedden's award of CSC. The Court remands the case to the BCNR so that it may address Lt. Col. Pedden's claim that the Navy Instruction's requirement that CSC be applied to Marine Corps judge advocates at designation instead of upon original appointment is not a reasoned exercise of the Navy Secretary's discretion.

Having the BCNR render the initial decision and provide its rationale properly vests primary responsibility in the BCNR, whose members have the requisite expertise. It also ensures that this Court remains within its proper limits by deferentially reviewing the decision of the BCNR

---

selection boards, 10 U.S.C. § 628. *Richey v. United States*, 322 F.3d 1317, 1320 (Fed. Cir. 2003).

rather than devising, without any special knowledge of the military, its own response to the plaintiff's argument.

## V. CONCLUSION

Counts I and II of Lt. Col. Pedden's Amended Complaint and Count IV of his Supplemental Complaint fail to state a claim on which this Court may grant relief. The court will enter a separate order granting the defendant's RCFC 12(b)(6) motion in part, dismissing Counts I, II, and IV, and denying the plaintiff's motion for judgment on the administrative record under RCFC 52.1 as to the same counts. Even if these counts had stated a viable claim, under the appropriate deferential standard of review applicable to the Court's consideration of challenges to decision of military-records correction boards, the Court must uphold the BCNR's interpretation of its statutes and regulations. In this respect, the BCNR's decision is neither arbitrary and capricious nor inconsistent with the law.

Count III of the Amended Complaint states a claim on which this Court may grant relief. The court will enter a separate order denying as to Count III the defendant's Motion to Dismiss under RCFC 12(b)(6), staying consideration as to Count III of the plaintiff's motion for judgment on the administrative record under RCFC 52.1, vacating the BCNR's decision, and remanding the matter to the BCNR for 120 days for consideration of the claim articulated in Count III, specifically that SECNAVINST 1120.9A's application of CSC at designation is an arbitrary and capricious exercise of the Secretary of the Navy's discretion. Because this case has been pending for almost nine years, the Court will remand to the BCNR for a period of 120 days in order to obtain its expedited consideration of the single issue to be addressed.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**
